IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HANDONG WEN,**<br>　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**ROBERT E. WILLIS, FOXCODE, INC.,**<br>**and FOXCODE CAPITAL MARKETS,**<br>**LLC,**<br>　　　　　　**Defendants.** | CIVIL ACTION<br><br>NO.  15-1328 |

## OPINION

Plaintiff Handong Wen brings this action against Defendants Foxcode, Inc. ("Foxcode"), Foxcode's principal Robert Willis ("Willis"), and Foxcode Capital Markets, LLC ("Foxcode Capital").  Plaintiff alleges that Defendants Foxcode and Willis induced him to invest $4 million in a fraudulent scheme.  Specifically, Plaintiff alleges that he invested money in Foxcode Far East, LLC ("Far East"), a limited liability company created by the parties for Wen's benefit, but that Defendants instead siphoned off most of his investment for their own personal use and profit.  In his Amended Complaint, Plaintiff alleges claims for Pennsylvania Law Securities Fraud and state law breach of fiduciary duty.  Defendants moved to dismiss Plaintiff's breach of fiduciary duty claim.  For the reasons that follow, Defendant's motion is granted in part and denied in part.

**I.**　　**BACKGROUND**

Wen is a citizen of the People's Republic of China who is currently enrolled as an undergraduate student at Temple University.  Am. Compl. ¶ 3, 7.  Willis is the principal of Foxcode, an investment and merchant banking firm.  *Id.* ¶ 8.

According to the allegations in the Amended Complaint, in or around the middle of 2013, Willis represented to Plaintiff that, if he placed a $4 million investment with Willis and/or Foxcode, they would manage that investment for his benefit, deliver a return on the investment, and guarantee that the $4 million principal would be returned in full when the investment concluded.  *Id.* ¶ 9.  Plaintiff agreed to make the investment, and the Defendants created two entities under the laws of Delaware as a vehicle to receive Plaintiff's funds – Far East and Defendant Foxcode Capital.  *Id.* ¶¶ 11-12.  In reliance on the Defendants' representations, Plaintiff signed the Foxcode Far East, LLC Agreement ("FFE Agreement").  *Id.* ¶ 19.  By the terms of the FFE Agreement, Plaintiff would contribute $4 million in exchange for a 99.9% membership interest in Far East, and Foxcode Capital would contribute $4000 for a 0.1% membership interest while providing "all finance advis[ory] services necessary to generate earnings for Foxcode Far East LLC."  Am. Compl. Ex. A at 3-4.  Foxcode Capital was to be paid 2% of the committed capital upon execution of the agreement and on each year thereafter as a management fee.  *Id.* at 7.  Foxcode Capital was also entitled to a "Performance Fee," equal to 30% of all distributions made to Plaintiff over his committed capital plus an annual return of 15%.  *Id.*  Far East was to be managed by its members, Plaintiff and Foxcode Capital.  Am. Compl. Ex. A at 8.  After signing the agreement, Plaintiff delivered the $4 million to Far East via two wire transfers made on July 22 and July 25, 2013.  Am. Compl. ¶ 22.

Plaintiff alleges that Far East and Foxcode Capital are sham entities owned, controlled, and dominated by Willis and Foxcode; that Far East and Foxcode Capital are alter egos of Willis and Foxcode and were created solely for the purpose of receiving Plaintiff's $4 million; that neither company has any employees; that they have never observed corporate formalities; and that they were never adequately capitalized.  *Id.* ¶¶ 13-18.  Plaintiff further alleges that, rather

than investing the money for his benefit, in accordance with the FFE Agreement, Defendants Willis and Foxcode, through Foxcode Capital, drained the money out of Far East's bank account, transferring nearly all of it into their own accounts.  *Id.* ¶ 25.  Specifically, on December 23, 2013, Willis made a wire transfer of $1 million from Far East into his personal bank account.  *Id.* ¶ 26.  And by the end of March 2014, the Defendants had transferred all but approximately $26,000 of the original $4 million out of Far East's bank account and into the Defendants' accounts.  *Id.* ¶ 27.  Neither Plaintiff nor any representative of his consented to these transfers of funds to personal accounts.  *Id.* ¶ 28.

 Plaintiff began to suspect that his investment had been dissipated without adequate compensation and without providing any return to him.  *Id.* ¶ 29.  He inquired of Willis on several occasions as to the performance and status of the investment and/or to seek the return of the $4 million and the return thereon, but received no satisfactory response, despite the fact that the FFE Agreement provides that "Foxcode Capital Markets will submit a monthly written report of any of the above actions together with Cash Flow and Balance Sheet statements to Handong Wen or his authorized agent."  *Id.*; Am. Compl. Ex. A at 21.  Through counsel, Plaintiff also requested that Willis produce all documents to show what happened to the money.  Am. Compl. ¶ 30.  Plaintiff made several requests and Willis promised to produce the records, but the records have not been produced in full.  *Id*. ¶ 31.  According to Willis, many of the records he should have kept were never created and do not exist.  *Id*.  The Defendants produced only a self-prepared general ledger, balance sheet, and profit and loss statements, as well as tax returns and a few emails.  *Id*. ¶ 32.  On the balance sheet provided by the Defendants, $3,885,457.39 of Plaintiff's $4,000,000.00 investment is recorded as having been "loaned" to Willis, personally,

3

and to Foxcode. *Id*. ¶ 33. Of the $114,542.61 not recorded as loaned to Willis, $80,000 was paid to Foxcode as a "consulting" expense. *Id*. ¶ 34.

Plaintiff alleges that the Defendants secured a profit or return on the "loaned" funds of at least $5.6 million (over and above the $4 million in principal), which they have kept for their own benefit. *Id*. ¶ 33.

Plaintiff filed a seven-count Complaint in this Court on March 16, 2015 against Foxcode and Willis. In it, he asserted claims for: (1) fraud; (2) fraud in the inducement; (3) securities fraud under federal law; (4) securities fraud under Pennsylvania law; (5) conversion; (6) misappropriation; and (7) breach of fiduciary duty. Defendants moved to dismiss Plaintiff's Complaint, which was granted except with respect to Plaintiff's claim for Pennsylvania securities fraud. Plaintiff was also granted leave to re-plead his state law breach of fiduciary duty claim, and on August 10, 2015, Plaintiff filed an Amended Complaint re-pleading his breach of fiduciary claim against Foxcode Capital, a signatory to the FFE Agreement, and against Foxcode and Willis on an alter ego theory. Defendants have moved to dismiss Plaintiff's amended breach of fiduciary duty claim.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Consistent with the Supreme Court's rulings in

4

*Twombly* and *Iqbal*, the Third Circuit requires a two-step analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The Court must construe the facts and draw inferences in the light most favorable to the plaintiff. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 786 F.3d 284, 290 (3d Cir. 2014). However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Great W. Mining*, 615 F.3d at 177 (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-530 (2011).

### III.   DISCUSSION

Although Defendants argued in their motion to dismiss the original Complaint that Plaintiff's breach of fiduciary duty claim is barred by the gist of the action doctrine under Pennsylvania law, the Court did not address that argument as it found that Plaintiff had failed to state a claim against Defendants Willis and Foxcode given that, under the FFE Agreement, only Foxcode Capital owed a fiduciary duty to Plaintiff. *See Wen v. Willis*, -- F. Supp. 3d --, No. 15-1328, 2015 WL 4611903, at *8 (E.D. Pa. July 31, 2015) (the "July 31, 2015 opinion"). The Court further noted that while some of Plaintiff's allegations suggested that he was seeking to pierce the corporate veil to allege a breach of fiduciary duty claim against Willis and Foxcode,

5

Plaintiff had made clear that any suggestion that he was attempting to pierce the corporate veil was "incorrect." *See id.*, at *8 n.4. In his Amended Complaint, Plaintiff asserts a claim for breach of fiduciary duty against Foxcode Capital, and re-asserts his breach of fiduciary claim against Willis and Foxcode under an alter ego theory of liability. In their motion to dismiss, Defendants once again argue that Pennsylvania's gist of the action doctrine bars Plaintiff's breach of fiduciary duty claim and further argue that Plaintiff has failed to plead sufficient facts to pierce the corporate veil.

    A.    **Conflict of Law**

A threshold issue is raised by Plaintiff's assertion that the gist of the action doctrine does not apply because his claim for breach of fiduciary duty is governed by Delaware law. Opp'n at 6. Plaintiff relies on the "Formation" provision of the FFE Agreement, which states that Far East was formed "in accordance with the laws of the State of Delaware" and that "[t]he rights and obligations of the Members will be as stated in the Delaware Limited Liability Company Act (the 'Act') except as otherwise provided." Am. Compl. Ex. A at 2. However, nothing in the Formation provision mandates that Delaware law should be used to examine the validity of Plaintiff's tort claims. *See Tier1 Innovation, LLC v. Expert Tech. Grp., LP*, No. 06-4622, 2007 WL 1377664, at *2 n.1 (E.D. Pa. May 8, 2007). To the contrary, two other provisions in the FFE Agreement suggest that the parties contemplated that Pennsylvania law would apply to any disagreements arising from the contract. First, in the "Governing Law" provision, the signatories agreed to "submit to the jurisdiction of the courts of the Commonwealth of Pennsylvania for the enforcement of this Agreement." Am. Compl. Ex. A at 17. Second, the "Mediation and Arbitration" provision directs the parties to resolve disputes "aris[ing] out of or in connection with" the FFE Agreement first "through friendly consultation," then through mediation, and

finally through "final and binding arbitration in accordance with the laws of the Commonwealth of Pennsylvania." *Id*.  Nowhere in the Agreement do the parties explicitly specify whether Delaware or Pennsylvania substantive tort law should apply to lawsuits arising out of or relating to the agreement.  Accordingly, the Court finds that the FFE Agreement does not specify the applicable state law.

Under Pennsylvania's choice of law rules, when no choice of law provision governs what law to apply in a dispute, the first step is to determine "whether a conflict exists between the laws of [the competing states]." *Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (Pa. Super. 2006) (citation omitted).  If there is no conflict between the laws of competing states, no further analysis is necessary and the law of the forum state applies.  *See, e.g.*, *State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 185 n.1 (3d Cir. 2006) (citation omitted) ("[B]ecause there is no conflict between the laws of other states that may have an interest . . . a court shall apply the law of the forum state.").  Here, although Delaware law does not include a "gist of the action" doctrine as such, there is no conflict as both Delaware and Pennsylvania law preclude a Plaintiff from bringing a tort claim that arises solely from a contract between the parties.  *Compare eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002) (stating that under gist of the action doctrine, a plaintiff is precluded from recovering in tort for claims that actually sound in contract) *with Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."); *see also U.S. Claims, Inc. v. Saffren & Weinberg, LLP*, No. 07-0543, 2007 WL 4225536, at *8 n.8 (E.D. Pa. Nov. 29, 2007) (concluding in choice of law analysis that there is no conflict

between Pennsylvania and Delaware law with regard to application of "gist of the action doctrine"). Accordingly, Pennsylvania law governs the application of the gist of the action doctrine here.

### B. Gist of the Action Doctrine

As summarized in the July 31, 2015 opinion, the "gist of the action" doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims, where such tort claims: "(1) aris[e] solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) when the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Wen*, 2015 WL 4611903, at *4 (citing *eToll*, 811 A.2d at 19). The conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter arises out of "breaches of duties imposed by law as a matter of social policy." *eToll*, 811 A.2d at 14. "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" *Id.* (citing *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 246 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002)).

Applying this rubric, claims for breach of fiduciary duty are barred under Pennsylvania's gist of the action doctrine if there are "no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside" of the parties' contractual agreements. *Brown & Brown*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010); *see also Cunningham Lindsey U.S., Inc. v. Bonnani*, No. 13–2528, 2014 WL 1612632, at *7 (M.D. Pa. Apr. 22, 2014) (dismissing breach of fiduciary

8

duty claim "governed entirely by the [defendants'] employment agreements and their respective non-solicitation and non-competition provisions" where plaintiff "failed to allege any conduct underlying its fiduciary duty . . . claim[ ] that is not contemplated by the defendants' contracts"). Conversely, claims for breach of fiduciary duty are not barred if the fiduciary duty at issue goes "beyond the particular obligations contained in" the parties' contract. *Bohler-Uddeholm Am.*, 247 F.3d at 105; *see also Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 779 (M.D. Pa. 2008) (breach of fiduciary duty claims not barred where such duties "are separate and distinct from the contractual duties contained within [the parties'] Partnership Agreement," which "does not provide for the fundamental characteristics of trust, fairness, honesty, and good faith that define the essence of the partners' relationship"). Therefore, to survive a motion to dismiss based on the gist of the action doctrine, the plaintiff must have alleged a breach of obligations that were imposed "as a matter of social policy" rather than "by mutual consensus." *See Redevelopment Auth. of Cambria Cnty.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).

      Here, Plaintiff argues that Defendants breached the fiduciary duties they owed Plaintiff by "misappropriat[ing] [Plaintiff's] $4 million to their own use and benefit by, among other things, causing the funds to be transferred to Willis and Foxcode and/or 'loaning' the funds to Willis and Foxcode to use for their benefit instead of Wen's." Am. Compl. ¶¶ 56-57. Plaintiff defines the duty Defendants owed him as a duty "to act in the best interests of Wen" and to "invest the $4 million for his benefit." *Id.* ¶ 55. As explained in the July 31, 2015 opinion, the duty to invest Plaintiff's $4 million for his benefit is a duty enshrined in the FFE Agreement. *See Wen*, 2015 WL 4611903, at *6. Thus, Defendants' alleged failure to invest Plaintiff's $4 million for his benefit concerns the contractual agreement between the parties, not a broader social policy, and accordingly cannot serve as the basis for a breach of fiduciary duty claim. On

the other hand, Plaintiff's allegation that Defendants breached their fiduciary duty to "act in [his] best interests" refers to fiduciary duties flowing between Plaintiff and Defendants as partners to the LLC that are "separate and distinct" from the contractual duties within the FFE Agreement. *See Rahemtulla*, 539 F. Supp. 2d at 779. The FFE Agreement contains no provision that the members must provide the fundamental characteristics of trust, fairness, honesty, and good faith. Instead, those duties were owed by default by operation of state law.[1] Because Plaintiff has alleged a breach of a duty that is based in social policy and not by written consensus, the "gist of the action" doctrine does not apply to bar this claim of fiduciary breach.

### C. Alter Ego Theory of Liability

As noted in the July 31, 2015 opinion, "the only entities owing any fiduciary duties under the FFE Agreement are its two managers, Wen and Foxcode Capital." *Wen*, 2015 WL 4611903, at *8. In his Amended Complaint, Plaintiff seeks to pierce the corporate veil and hold Willis and Foxcode personally liable for breach of fiduciary duty.

While a corporation is generally considered a legal entity separate and distinct from its shareholders, "[t]his legal fiction . . . will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." *Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) (citations omitted).

---

[1] It is unclear at this point whether such substantive rights and obligations are determined by Pennsylvania or Delaware law. In either case, however, Defendant Foxcode Capital would owe Plaintiff fiduciary duties by operation of state law. As indicated in the July 31, 2015 opinion, the "Formation" provision of the FFE Agreement states that "[t]he rights and obligations of the Members will be as stated in the Delaware Limited Liability Company Act," Am. Compl. Ex. A. at 2, which "contemplates that equitable fiduciary duties of care and loyalty will apply by default to a manager or manager member of a Delaware LLC." *Wen*, 2015 WL 4611903, at *8 (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012)). Similarly, under Pennsylvania law, members to a member-managed LLC have fiduciary obligations to each other. *See* 15 Pa. Cons. Stat. § 8904. The rationale for that rule is that "[o]ne should not have to deal with his partner as though he were the opposite party in an arms-length transaction," and "should be allowed to trust his partner, to expect that he is pursuing a common goal and not working at cross-purposes." *Clement v. Clement*, 260 A.2d 728, 729 (Pa. 1970). Among the fiduciary duties that partners owe each other are the duty of loyalty, *id.*, and the corresponding obligation to act for the benefit of the other members of the partnership. *Health & Body Store, LLC v. Justbrand Ltd.*, 480 F. App'x 136, 143 (3d Cir. 2012) (citations omitted).

Public policy demands piercing the corporate veil "whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests." *Id.* (citing *Watercolor Grp., Inc. v. Newbauer, Inc.*, 360 A.2d 200 (Pa. 1976)). However, under Pennsylvania law, "the standard a party must meet to persuade a court to pierce the corporate veil is a stringent one." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 509 (E.D. Pa. 2014) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("Such a burden is notoriously difficult for plaintiffs to meet.")). Pennsylvania courts presume the legitimacy of the corporate form and will not pierce the veil unless exceptional circumstances warrant such an exceptional remedy. *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). While there is no bright line test to determine whether to pierce the corporate veil, Pennsylvania courts examined the following factors: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs; and, (4) use of the corporate form to perpetrate a fraud. *Id.* Although a plaintiff seeking to pierce the corporate veil need not plead facts sufficient to establish *all* the relevant factors, the allegations in the complaint must combine to show "that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes." *Accurso*, 23 F. Supp. 3d at 509-10, 511 n.16.

Here, although Plaintiff has pleaded the legal elements of a veil-piercing theory, he has pointed to no facts in the Complaint that would warrant a conclusion that he has a plausible claim for relief on this theory. In support of the first factor, *i.e*, undercapitalization, Plaintiff argues that his allegations in the Amended Complaint show that "Foxcode Far East's only asset was the $4 million invested by Wen and that all of that investment had been transferred to Defendants' bank accounts by March 2014, leaving no remaining assets." Opp'n at 14.

11

However, as Plaintiff seeks to pierce the corporate veil of *Foxcode Capital*, not Foxcode Far East, whether Foxcode Far East was undercapitalized is irrelevant.

As for the second factor, *i.e.*, failure to adhere to corporate formalities, although Plaintiff's Amended Complaint contains an allegation that "according to Willis, many of the records that he should have kept, if the investment were a legitimate business transaction and not a fraud, were never created and do not exist," Am. Compl. ¶ 31, nowhere does the Amended Complaint identify any specific corporate function Foxcode Capital failed to observe. For example, Plaintiff does not allege that Foxcode Capital did not keep its own financial records, conduct meetings, file tax returns, or keep any books and records. To the contrary, the Amended Complaint alleges that "Willis, Foxcode, *and Foxcode Capital Markets* have produced . . . a general ledger, balance sheet, . . . profit and loss statement[,] . . . tax returns, and a few isolated emails," *id.* ¶ 32 (emphasis added), indicating that Foxcode Capital may have kept separate financial records and filed separate tax returns. Absent detail regarding Foxcode Capital's failure to follow corporate formalities, the allegations in the Amended Complaint do not pass muster.

Turning to the third factor, *i.e.*, substantial intermingling of corporate and personal affairs, Plaintiff points to allegations in the Amended Complaint that Willis and Foxcode "commingled assets" by transferring all but approximately $26,000 of Plaintiff's $4 million investment in Foxcode Far East to their bank accounts. Opp'n at 15-16. However, as Defendants note, the Amended Complaint itself alleges that each of the transfers of funds was memorialized in Foxcode Capital's balance sheet. Reply at 7; Am. Compl. ¶¶ 33-34. While *undocumented* loans could potentially serve as the basis for piercing the corporate veil, the fact that Foxcode Capital memorialized the transfers in it records undercuts an alter ego theory. *See*

*In re Main, Inc.*, 213 B.R. 67, 91-92 (Bankr. E.D. Pa. 1997), *aff'd in part, rev'd in part sub nom.* *In re Blatstein*, 226 B.R. 140 (E.D. Pa. 1998), *aff'd in part, rev'd in part*, 192 F.3d 88 (3d Cir. 1999) ("It is well recognized that it is not illegal for a closely-held corporation to lend money to its shareholders as long as such loans are properly recorded."). Moreover, "[s]elf-dealing, fraudulent transfers and fiduciary misconduct do not alone 'abuse the corporate form.'" *Sugartown Worldwide LLC v. Shanks*, No. 14-5063, 2015 WL 1312572, at *10 (E.D. Pa. Mar. 24, 2015). If it were otherwise, "every claim for breach of the duty of loyalty or fraudulent transfer by a controlling principal would create a risk of setting aside the corporate veil. The exception would otherwise swallow the rule." *Id.*

Finally, Plaintiff offers no new factual allegations in support of the fourth factor, *i.e.*, use of the corporate form to perpetrate a fraud, but simply states that the allegations he identified in support of the other three factors "equally make out a claim that the corporate form of FCM was used to perpetuate a fraud." Opp'n at 16-17. Having already determined that the allegations Plaintiff points to in the Amended Complaint are insufficient to support veil-piercing under any of the three other factors, it follows that those same allegations cannot support a veil-piercing claim under the fourth factor.

In conclusion, the Court finds that Plaintiff has failed to allege facts in support of piercing the corporate veil and accordingly grants Defendants' motion to dismiss the breach of fiduciary duty claim against Defendants Willis and Foxcode.

Dated: **October 22, 2015**

          **BY THE COURT:**

          **/S/WENDY BEETLESTONE, J.**

          _____
          **WENDY BEETLESTONE, J.**